# COURT OF APPEALS
## DECISION
## DATED AND FILED

### December 29, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP945-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CF206

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

MICHAEL J. LEIGHTON,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Michael Leighton appeals from a judgment convicting him of two felonies and one misdemeanor, and from an order denying

his motion for resentencing or sentence modification. He contends that the circuit court relied upon an improper sentencing factor and that his sentences were unduly harsh. We reject both contentions and affirm.

## BACKGROUND

¶2 The State charged Leighton with two counts of identity theft, one count of fraudulent use of a credit card, two counts of theft, and one count of entry into a locked vehicle, all as a repeat offender. The complaint alleged that Leighton took the victim's car key fob out of the victim's gym locker, used the fob to enter the victim's car, took the victim's credit and debit cards from a wallet left in the car, and then used both cards. Leighton eventually entered no-contest pleas to the charges of identity theft and fraudulent use of a credit card. In exchange for the pleas, other counts were dismissed and read in.

¶3 The Department of Corrections submitted a presentence investigation report (PSI), and the defense submitted an alternative PSI. At the sentencing hearing, the circuit court quoted a passage from the alternative PSI stating that Leighton "understands he needs to address his substance abuse issues in an honest manner." The court then asked Leighton a series of questions "to assess [his] ability to be honest" about himself.

¶4 The circuit court first asked Leighton what his substance abuse issues were. Leighton answered "mostly pill abuse," saying he took pills "occasionally to just feel better, have a little fun." Upon further prompting, Leighton acknowledged that he also abused marijuana and alcohol, and that he was a drug addict. Based upon Leighton's responses, the court expressed concern that Leighton still was not capable of being honest about his substance abuse. Addressing the court's concern later in the hearing, Leighton stated:

2

> This whole thing, honest with myself, is new to me. So that's why I didn't come across very well talking about drug abuse addiction. It's—I don't want to see myself as an addict, so it's hard to say I am an addict. It's hard to accept those things when you're 51 years old.

¶5 The circuit court next asked Leighton how many times he had been convicted of a crime as an adult. Leighton answered "five to ten," when the actual number was twenty-five. After the court pointed out how far off he was in his answer, Leighton said he did not understand that the court was asking about individual charges because many of his convictions were consolidated in the same cases.

¶6 The circuit court then asked Leighton to explain why he had committed so many crimes and spent so much of his adult life in prison. Leighton responded:

> Originally, your Honor, it was—it didn't seem real. I had some credit cards that weren't mine. I used them. It was easy money. It became a felony. After that, I couldn't get a job. So I would use that and use that, use that. And that's the hole I'm talking about. I did it to myself after I was 21 or so. And, unfortunately, sometimes I go back to my old ways and that's why we're sitting here today.

The court said Leighton's explanation that he "used something that I thought was mine" was "bogus" and that it "really isn't your old ways. It's what your way has always been." Leighton told the court that it had misheard him—i.e., that he had said he used credit cards that *were not* his.

¶7 The circuit court next asked Leighton about a claim that he been using the money he stole to support two families. Leighton said that he provided money to one woman with whom he had a previous relationship to help her with rent, but he later came to believe that she was using the money for drugs. The

court interrupted Leighton, stating its disbelief that Leighton did not know he was supporting the woman's drug habit.

¶8    Finally, the circuit court asked Leighton for the victim's name, in order to assess "how sorry you really are."  Leighton was not able to name the victim.

¶9    The circuit court proceeded to discuss the multiple opportunities Leighton had forgone to mature out of his criminal lifestyle.  The court noted that it had engaged in the colloquy with Leighton to "obtain an understanding about the comments [he] made in the [PSIs] and address whether or not [he had] made changes" or was simply saying what he thought the court wanted to hear.  The court concluded:

> And as I sit here today and I listened to you for the last 20 minutes, it's clear that your character is very low.  You are someone who is manipulative, is self-serving and truly lacks any understanding of the bad things that you have continued to impose on communities throughout the State of Wisconsin.
>
> You tell the alternative writer you finally are going to be honest with your drug abuse and substance abuse issues.  I doubt it.  You tell us today it was just an occasional thing, an occasional treat.  You tell us today that you have been convicted of five or ten offenses and—but you were confused on the way I asked it.  We know that your convictions, you've been convicted of 25 different crimes.  You've only been in the community 15 years, according to you.  And we also know that a whole multitude of other criminal offenses have been dismissed and read in over the years.
>
> Each time you get released from prison, Mr. Leighton, you go back to and resort to the same criminal behavior.  Whether it's been classified as theft, burglary, misappropriating ID, forgery, fraud, those are all the names of your convictions over the years.  But it's you stealing from innocent people and benefiting yourself to support

4

your addictions, to support your lifestyle without any degree of remorse or interest in changing.

I truly hope, Mr. Leighton, that you are sincere that you want the change. I really do for your benefit and for everybody's benefit. We're only going to be better if you quit committing criminal offenses. But at the end of the day, I don't think it's going to happen just based upon your character. I think you're a high risk to reoffend. I think you have so many positive traits and possibilities. And over the last 30 years, like we've talked about, you just have refused to take the positive route of hard work and working your way up and earning the things that you're going to get as opposed to ripping people off.

So for those reasons, I believe that a prison sentence is appropriate. I understand that your extended supervision was revoked and you're serving a sentence on that. I also understand that you received a prison sentence from the Walworth County case. Those are bad things for you. But that's because you were convicted of serious crimes and you're out on supervision. You were given an opportunity to live in the community and you continued to engage in very serious criminal conduct.

The question on whether or not to make this sentence concurrent or consecutive to those sentences is really easy. It's going to be consecutive. And the reason for it, Mr. Leighton, is because these are separate crimes. And like [the prosecutor] said in one of her first sentences, you are and have been for the last 30-plus years a career criminal. And with career criminals, I don't see any benefit to give them a discount because they commit more offenses in more counties. It doesn't serve any of the purposes of what we're trying to accomplish when we sentence somebody.

¶10 The circuit court then sentenced Leighton to two years' initial confinement followed by three years' extended supervision on each of the identity theft counts and nine months on the credit card count, to be served concurrently to one another but served consecutively to previously imposed sentences. The court also imposed restitution in the amount stipulated by the parties, and it ordered that Leighton would not be eligible for the Challenge Incarceration Program or Substance Abuse Program.

¶11 Leighton filed a motion for resentencing, alleging that the circuit court had sentenced him based upon several misunderstandings related to his truthfulness. A hearing on the motion was held. In defending its assessment that Leighton was manipulative and a liar, the court noted that it had observed Leighton's body language, demeanor, timing, tone and attitude at the sentencing hearing. The court pointed out that the PSI author, who also observed Leighton's demeanor, similarly concluded that "while [Leighton] voiced that he was sorry for his actions and the impact they had on the victims involved, his claims seemed rehearsed and superficial" and that "he has clearly learned nothing from his past mistakes." Additionally, the court observed that it would have imposed the same sentences based upon Leighton's history as a career criminal, even if it had not deemed him to be a liar. The court then denied the postconviction motion, and Leighton now appeals.

## DISCUSSION

¶12 Leighton first contends that the circuit court relied on the improper factor that he was "lying" when he addressed the court at sentencing. An improper sentencing factor is one that is "totally irrelevant or immaterial to the type of decision to be made." *Elias v. State*, 93 Wis. 2d 278, 282, 286 N.W.2d 559 (1980). For instance, race and gender may play no part in sentencing. *State v. Harris*, 2010 WI 79, ¶3, 326 Wis. 2d 685, 786 N.W.2d 409. A defendant's character, however, is one of the most basic factors that a circuit court is supposed to consider when fashioning a sentence. *See generally State v. Gallion*, 2004 WI 42, ¶¶39-46, 270 Wis. 2d 535, 678 N.W.2d 197. Leighton cites no authority that would suggest a court cannot consider a defendant's truthfulness as a proper sentencing factor related to character. Rather, Leighton argues it was not true that

6

he was a liar—not that it would be irrelevant if he were a liar. Leighton thus appears to be seeking resentencing based upon "inaccurate information."

¶13 "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. If a defendant can establish by clear and convincing evidence both that inaccurate information was presented at sentencing and that the court relied upon the misinformation in reaching its determination, the burden shifts to the State to show that the error was harmless. *Id.*, ¶26. This court will independently review a due process claim that a defendant has been sentenced based upon inaccurate information. *Id.*, ¶9. However, we will generally defer to any credibility determination or factual findings underlying the circuit court's decision on a constitutional issue. *Johnson v. Merta*, 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980). Moreover, we do not deem information to be inaccurate merely because it was contested. Rather, the defendant must demonstrate the information was "extensively and materially false." *State v. Travis*, 2013 WI 38, ¶18, 347 Wis. 2d 142, 832 N.W.2d 491.

¶14 Here, Leighton points to what he characterizes as three "misunderstandings" by the circuit court. However, he has not established that the alleged misunderstandings constituted extensively and materially false information or that the court relied upon them. First, Leighton asserts that the court erroneously determined that he was lying about the number of his prior convictions. Nonetheless, Leighton clarified that he had misunderstood the court's question, and the court expressly acknowledged that clarification later in its discussion. Second, Leighton asserts that the court erroneously believed Leighton said he used credit cards he thought were his, when Leighton actually said he used cards that were not his. Again, however, Leighton clarified his statement before

7

the court pronounced sentence, and the court did not repeat the mistake when discussing why it was imposing the sentences it did. Third, Leighton asserts the court erroneously determined that he was lying about knowing that a former girlfriend was spending the stolen money he gave her on drugs. He has not, however, presented any affidavit from the girlfriend or other evidence that would objectively support his claim of ignorance. Ultimately, the court's decision whether to believe Leighton was merely a credibility determination, which we will not set aside.

¶15 Moreover, Leighton ignores the context in which the circuit court made its comments. The alleged misunderstandings were part of a twenty-minute colloquy during which the court had ample time to observe Leighton's demeanor and consider the forthrightness of his answers. The court's impression that Leighton was lying and manipulative was based not upon a single statement Leighton made, but upon the contrast between his extensive criminal history and his hollow claims to have changed, while still minimizing his behavior.

¶16 Leighton next contends that his sentences were unduly harsh because the circuit court imposed punishment "consecutively to a sentence already given for the same actions" in violation of his double jeopardy rights, which also resulted in the loss of previously granted eligibility for earned release programs. Leighton's argument combines two claims under the umbrella of a single issue.

¶17 A sentence may be considered unduly harsh or unconscionable only when it is "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Grindemann*, 2002 WI App 106, ¶31, 255 Wis. 2d 632, 648 N.W.2d 507 (citation

omitted). There is a presumption that a sentence "well within the limits of the maximum sentence" is not unduly harsh. *Id.*, ¶¶31-32. The two years of initial confinement and three years of extended supervision imposed here were well within the twenty-two years of total imprisonment that the circuit court could have imposed. Even taking into account that the sentences were imposed consecutively to a prior revocation sentence and resulted in Leighton's loss of eligibility for an earned release program, the sentences were not excessive given Leighton's extensive criminal history.

¶18 Furthermore, the Double Jeopardy Clause protects against multiple punishments for the same offense. *See* U.S. CONST. amend. V; *State v. Kurzawa*, 180 Wis. 2d 502, 515, 509 N.W.2d 712 (1994). Leighton's prior revocation sentence punished him for that conviction, not for the offenses at issue in this case. *See State ex rel. Flowers v. DHSS*, 81 Wis. 2d 376, 386, 260 N.W.2d 727 (1978). There was no double jeopardy violation here.

> *By the Court.*—Judgment and order affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.